## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERIC HARRIS*, Individually  and on behalf of all Others similarly situated,*

Plaintiff,

v.

NCR CORPORATION, a foreign
for profit Corporation,

Defendant.

Case No:
216(b) Collective Action

---

**COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE OVERTIME WAGE SECTION OF THE FAIR LABOR STANDARDS ACT (FLSA)**

---

Plaintiff, ERIC HARRIS, individually and on behalf of all other similarly situated persons employed as inside sales representatives ("ISR") from the period of three years preceding the filing of this complaint through the date of trial who consent to their inclusion in this collective action herein sue Defendant **NCR Corporation**, (hereinafter referred to as "NCR", or Defendant), pursuant to 29 U.S.C. § 216(b), of the Fair Labor Standards Act

(the "FLSA") and states as follows:

## RECITATION OF FACTS

1.     Plaintiff Harris and the class of similarly situated current and former insides sales employees (ISR) all worked for Defendant under job titles including:   Inside Sales Representative (I, II or III) (BDR), Sales Development Representative (SDR) or Account Manager (AM), Account Executive (AE), Sales Consultant, and other various job titles used to describe persons who performed substantially the same requirements of an inside sales representative ("ISR"), all worked at Defendant's physical offices, or worked remotely and their work was directed from Defendant's multiple offices across the United States.

2.     The ISR's primary function was to use telecommunications such as telephones, email and technology to solicit businesses to purchase NCR's equipment and services (hardware and software), and later subscription services for Defendant's software and cloud services and to complete the full sales cycle of closing deals and signing up customers on written sales orders or agreements.

3.     In addition, NCR employed numerous ISR in the role of

business development employees, titled as Sales Development Representatives (SDR) whose job it was to primarily develop warm business leads by soliciting businesses to attend appointments with Account Executives who then would attempt to negotiate and close sales or deals with them.

4.      Plaintiff Harris, and the putative class of similarly situated employees were not compensated for all hours worked over 40 in each and every work week, and were permitted by NCR to knowingly suffer to work off the clock in violation of the FLSA.

5.      Further, even when Defendant did pay a premium for some overtime hours worked on the rare occasions they requested the overtime hours and had ever agreed to pay for the overtime hours, NCR willfully underpaid ISR by failing to include the value of earned bonuses and commissions in the calculation of overtime as required by the FLSA, strictly paying them premiums based solely upon their base pay.

6.      Defendant NCR has improperly and willfully withheld and refused to pay Plaintiff and all ISRs overtime wages and premiums for overtime hours worked and in violation of federal law.   Defendant's

employment and payroll records will demonstrably show that Plaintiff, and all ISRs were non-exempt employees such that Defendant cannot now and should not be able to claim any exemption to overtime pay, and that Defendants knew that their failure to pay overtime wages to ISR was a willful violation of the FLSA.

7.     At minimum, Defendant acted with reckless disregard for its obligations to pay ISR overtime premiums for all hours worked, and failed to accurately track and record ISR's work hours pursuant to federal regulation 29 C.F.R. § 516.

8.     Defendant knows that ISR fail the short test for the executive exemption since they do not supervise two or more full time employees, and their primary job duties are non-exempt sales duties and not management of the business or enterprise nor any department of Defendant.

9.     Furthermore, as Plaintiff and all other ISR were paid on an hourly basis, they also cannot be declared exempt from overtime pay under the Executive or administrative or highly compensated exemptions.

10.     Alternatively, Plaintiff and all others similarly situated were classified as salaried, non-exempt employees.

11.    Defendant knew or should have known that ISRs do not meet the administrative exemption, as their primary job duty does not in involve the use of discretion and independent judgment in matters of significance affecting the company and its management; and that their primary job duty is production and sales, typically non-exempt under the FLSA and as concluded by the DOL regulations and the DOL field operations handbook.

12.    Defendant has a comprehensive lead generation system such that inside sales representatives do not have to solely rely upon their own contacts and sources to generate sales.

13.    Defendant absolutely knows that its inside sales representatives (ISR) routinely worked overtime hours, as managers and supervisors witnessed the extra hours, managers and company officials saw and knew that ISR were accessing telephone systems, CRM databases, emails, and engaged in computer demonstrations outside the standardized mandatory corporate schedule.

14.    Defendant also knew that ISR performed work in the evenings and on weekends and even managers communicated with ISR about work outside the regular business hours and when ISR were off the clock or

should have been.

15.     Defendant dangled carrots for ISR to advance by publishing and comparing sales production praising the top performers while denigrating the lower performers such that ISRs were pressured to work extra hours to hit sales goals, quotas and avoid termination.

16.     Further, Defendant willfully discouraged ISRs from reporting overtime hours by both misleading Plaintiffs to believe that since overtime was not pre-approved they could permit the Plaintiffs to then work overtime hours and not report these hours and that they were neither entitled to the overtime pay or that their pay practices and policies were lawful, when in fact they were not.

17.     Defendant has willfully failed to pay Plaintiff and all similarly situated employees in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiff and similarly situated employees were not paid premium pay (aka overtime wages) for all hours worked in excess of forty (40) hours per week.    Plaintiff Harris, and the class of similarly situated employees did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendant's pay

practices are not only unfair, but blatantly unlawful under the FLSA.

18.    In this pleading, the term "Inside Sales Representative" means any employee of Defendant working under the various titles of: Inside Sales Representative (I, II or III) (BDR), Sales Development Representative (SDR) or Account Manager (AM), Account Executive (AE) Sales Consultant, or other various job titles of employees who performed substantially the same job of an inside sales representative ("ISR") working at Defendant's offices in the United States or working remotely and reporting to Defendant's offices or whose work was controlled from any of its US offices.

19.    Inside Sales representatives in this class make predominantly spend their days making outbound (cold calls), and some inbound phone calls, email solicitations, researching the internet and either making internet presentations or demonstrations and consummate sales of new products or cloud applications, the sale of software and hardware or credit card processing services for business customers or clients of Defendant, including many restaurants and hotels in the hospitality industry.

20.    The allegations in this pleading are made without any

admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.   Plaintiff reserves all rights to plead in the alternative.

## Jurisdiction & Venue

*21.*   This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §1331*, because this action involves a federal question pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216 (b).*

22.   This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

23.   This Court has personal jurisdiction over the Defendant, because the Defendant operates substantial business in Atlanta, Fulton County, Georgia and the damages at issue occurred within this District, where Defendant maintained an office throughout the relevant time period.

24.   Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the Defendant resides in this district and because a substantial part of the events giving rise to the claims occurred in this District as Plaintiff was hired from, supervised from and his work was

directed by officers and managers from their principal place of business and corporate office located at 864 Spring Street NW, Atlanta, GA, 30308.

25.    The overtime wage provisions set forth in FLSA §207 apply to Defendant, as NCR engaged in interstate commerce under the definition of the FLSA.   Indeed, at all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203 as a common business enterprise.   Additionally, Defendants earned more than $500,000 in revenue during the years 2019 to 2021 as well.

## The Parties

### *Representative Plaintiff, Eric Harris*

26.    Eric Harris resides in Stone Mountain, Georgia.   He was first hired to work for Defendant as an Inside Sales Representative in April 2019 to work in Defendant's corporate office and principal place of business in Atlanta, Georgia until he was laid off due to financial changes by NCR on or about February 11, 2022.

27.    At all times material, Plaintiff worked as an ISR from the Defendant's Atlanta, Georgia corporate office.   Plaintiff's work was highly

supervised, micro-managed, and scrutinized on a daily basis by management in Atlanta, Georgia, from the Atlanta office located at 864 Spring Street NW, Atlanta, GA, 30308.

28.    In March 2020, due to the Covid-19 Pandemic, NCR closed the office and all ISR were sent to work remotely from their homes up through the present day, although they still reported to managers and offices affiliated with or working from the Atlanta office.

29.    Plaintiff was switched to a SDR at one point during his employment, a position which still primarily involved performing substantially same job requirements and duties of a  ISR, soliciting businesses by email and phone calls to facilitate the sale of Defendant's products, services, including software, hardware and financial credit card processing services.

30.    Regardless of the job title, the primary duties and responsibilities were essentially unchanged and no written job description was provided to Plaintiff for the SDR.

31.    Plaintiff, like all other ISR, was required to meet certain metrics which gauged his performance and determined whether he would continue

to have a job.  These metrics included making a setting a specific number of appointments for customers to meet with Accounts Executives in attempts to finalize and close a sale of products or services.  At other times working in full cycle sales ISR positions, Plaintiff had sales quotas and was expected to sell upwards of 8 or 9 customers or $90,000 to $100,000 in revenues for the month.

32.    According to the NCR offer letter to Harris, he was provided a base salary of $50,000 plus a percentage to goal bonus or commission plan stated as total target cash with a target cash incentive of $29,428.57.  Thus, as the compensation plan is laid out, Harris, like all other ISR could earn a total sum in cash or gross compensation of 100%, with some percentage being the base pay and some percentage of sales bonus or commission set at a maximum amount by NCR.

33.    The commission or bonus component is paid out on a percentage to this target cash goal such that if Harris and any ISR hit 100% of the sales quota they We would earn the target cash incentive maximum sum stated, and if they hit 50% of the sales quota, they would only be paid 50% of this target cash bonus or commission.

*The Defendant*

34.     NCR Corp (formerly known as National Cash Register) is a for profit publicly traded Delaware company (symbol NCR) and an S & P 400 international corporation with world headquarters located at 864 Spring St NW, Atlanta, GA 30308.  Defendant may be served through its designated registered agent:  Corporation Service Company:   2 SUN COURT, SUITE 400, PEACHTREE CORNERS, GA, 30092.

35.     NCR is an American software, managed and professional services, consulting and technology company. It manufactures self-service kiosks, point-of-sale terminals, automated teller machines, check processing systems, and barcode scanners.

36.     NCR declares on its website that it is the world's enterprise technology leader for restaurants, retailers and banks. The #1 global POS software provider for retail and hospitality, and the #1 provider of multi-vendor ATM software, we create software, hardware and services that run the enterprise from back office to the front end and everything in between for our clients.

37.     NCR employs 34,000 employees in 160 countries and solutions

distributed in 141 countries, and has approximately 40 offices throughout the US including in the following 18 states:   Arkansas, California, Colorado, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Pennsylvania, Massachusetts, Nebraska, New Hampshire, New Jersey, Ohio, South Carolina, Texas, Washington,

38.     Upon information and belief and research, Defendant NCR employs inside sales employees (ISR) throughout the U.S. either working remotely or working from numerous offices, all of whom ultimately report to executives in the corporate office in Atlanta, Georgia.

39.    Inside Sales representatives (ISR) primarily worked from physical offices, including Atlanta, Georgia, but upon information and belief, as of the Covid-19 pandemic, all currently employed ISR have primarily been reassigned and recruited to work remotely.

40.    Defendant NCR is an employer within the definition of the FLSA, as it has revenues exceeding $500,000 annually in all applicable time periods, is involved in interstate commerce, and employs thousands of employees across the U.S.

41.     Given turnover, Plaintiff estimates that the putative class of

similarly situated inside sales representatives to be in the range of 1500 persons who worked as ISR within the preceding 3 years from the filing of this complaint, including 100 alone at any given time working at or reporting to the Atlanta, Georgia NCR corporate office.

42.    NCR was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d).

**General Collective Action Allegations**

43.    This collective action arises from an ongoing, longstanding, wrongful scheme by Defendant to willfully underpay and refuse to pay overtime wages to a large class of workers, the inside sales representatives (ISR), who Defendant knew, and knows still up through the filing of this complaint, routinely worked overtime hours without being paid for all hours worked.

44.    Defendant's unlawful pay practice applicable to all inside sales representatives permitting non-exempt employees to suffer to work overtime hours without being paid a premium through a De Facto unwritten policy or De Facto Rule which was to work as many overtime hours as the ISR could or needed to hit goals, keep their jobs while self-reporting no more than 40

hours per week and no more than 8 hours per day.

45.     Management clearly and without dispute "turned a blind eye" to the off the clock overtime hours worked by the inside sales reps, and did so for greed and to save many millions of dollars in labor costs and decrease expenses, all to the detriment of its inside sales representatives.

46.     Defendant no doubt made a calculated, willful decision to refuse to pay overtime wages under the risk that even if someone or many eventually made a claim for overtime wages, they would have benefited financially from the additional work hours in terms of increased sales, and the fact that the statute of limitations would run on claims before many would even assert their rights under the FLSA.

47.     As is often stated by Courts in similar FLSA overtime wage cases over the last 70 years, this is the classic case of permitting employees to "suffer to work" off the clock, as doing so is unfair and not being paid a fair wage for a fair day's work as the FLSA mandates and for which it was created.

48.     Despite being an international, publicly traded corporation, with employees throughout the United State of America, including numerous

attorney's and general counsel relationships, and having operated in the US and subject to the requirements of the FLSA for perhaps decades, Defendant has blatantly, and willfully violated the FLSA by:  a) willfully refusing to pay overtime wages when they knew and were aware of employees working overtime hours; b) willfully permitting ISR, who Defendant knew or should have known were non-exempt employees, to suffer to work off the clock without being paid the proper and lawful premium for all hours worked over 40 in each and every work week; c) willfully underpaid ISR even when paying overtime wages by failing to include bonuses and commissions in the regular rate and premium rates of payment of overtime wages; d) misleading ISR about the FLSA and meal break requirements and pressuring ISR to auto deduct 1 hour from their day for meal breaks even when ISR were working through some or all meal breaks and regardless of this fact; and d) misleading ISR for falsely claiming and representing that their off the clock work as not compensable and permitted by the FLSA; and (e) creating and maintaining a De Facto policy of ISR not working overtime hours on the clock or under reporting actual work hours on their time sheets while simultaneous encouraging overtime hours and discouraging reporting

overtime hours.

49.    The FLSA does not require employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendant knows, or should know, that employees are working overtime hours.

50.    Here, Defendant has maintained for many years the application of a blind ignorance policy, and De Facto off the clock policy, and have throughout the preceding 3 years of the filing of this Complaint and currently as well, been well aware of their inside sales representatives, including Plaintiff, routinely working overtime hours without being paid for all hours worked.

51.    Moreover, Defendant absolutely knows that even when it paid overtime premiums, it willfully underpaid Harris and all other similarly situated ISR by not including the values of commissions or bonus, including the target cash incentive in the calculations and the rate paid.

52.    All ISR in the Atlanta office worked on similar compensation plans of annualized rate of pay and some percentage to goal incentive bonus or commission plan.

53. Plaintiff further engaged in basic customer service and typical non-exempt work duties.

54. When hired, Harris like all other ISR was led to believe the position was a non-exempt position salaried position, and that if he had to work overtime hours to hit quotas, the time would be authorized and he would be entitled to overtime premiums.

55. However, Harris came to realize that the company declared that overtime hours had to be pre-approved and only when the company was requesting ISR to work extra hours would it pay overtime hours.

56. Thus, Plaintiff worked for instance on a Saturday when the company offered some premium for this overtime hours confirming to Harris that he was non-exempt from overtime pay.

57. However, the De Facto policy and rule was that all other overtime hours which were worked had to be off the clock and would be unpaid, despite knowledge of NCR, by and through its managers and supervisors, that Harris and ISR similarly situated routinely worked far more than 8 hours of work per day and far more than 40 hours per week.

58. It was such a rare occurrence that the company offered overtime

hours and overtime pay, that requesting pre-approval was never going to be authorized and was an illusory and fictitious process.

59.     More importantly though, it was made clear to Harris and other ISR that he worked with that in order to maximize the commission or bonus or incentive cash they could earn and meet sales or production goals or quotas that the job required, more than 40 hours per week of work was required.

60.     It is also well known to NCR that only those sales representatives who were working more than 40 hours, and many hours off the clock were the ones who reached the sales goals, the maximum target cash, and who were the most productive sales employees.

61.     Thus, Harris and other ISR were left with the dilema and between a rock and a hard place:  either work the overtime hours off the clock and without complaining or filing claims, or fall short of sales goals, earn very small bonuses or commissions and risk being fired for lack of production and lack of sales.

62.     Throughout Plaintiff's term of employment before going remote when Covid hit on or about late March 2020, Harris routinely came in early,

stayed late and worked most of the days without a 1 hour uninterrupted meal break.

63.     Management instructed Harris and other ISR to simply write in and report their hours as no more than 8 per day such as 9:00 am to 5:00 pm, or 8:30 to 4:30 pm., even when Harris and other ISR did not take a full 1 hour meal break or commenced work prior to this time or worked after this time and more than 8 hours in a day and more than 40 hours in the week.

64.     Most importantly, management and the company instructed ISR to falsify time records, under report their hours while approving, encouraging and permitting Harris and other ISR to work overtime hours off the clock.

65.     Plaintiff earned a bonus or commission, which was always for him and all other ISR, a very small percentage of their overall income, and thus were not retail exempt employees.   Regardless, the products and services being sold were not retail.

66.     Defendant led Plaintiff to believe that working more hours than being reported and, thus working off the clock, was a lawful pay practice by explaining that simply because it was not pre-approved the company did not

have to pay for the overtime hours.

67.    Harris and ISR were directly discouraged by NCR from accurately reporting their actual work hours, including the overtime hours worked.

68.    Harris and ISR were simultaneously encouraged by NCR to work as many hours as they could or wanted in order to meet sales goals, and thus keep their jobs for want of production.

69.    Defendant also discouraged Plaintiff and all other ISR from complaining about not being paid for overtime hours worked and for not being able to report and clock in all hours worked by telling them to focus on earning their bonuses and cash incentives, production goals and to just be thankful they had jobs.

70.    Plaintiff, like other ISR, including SDR's, was assigned to work on a specific team and line of products and services, such as credit card processing, or point of sale (POS) software and hardware.

71.    Harris primarily handled outbound calls and solicitations using emails, rather than inbound leads from businesses seeking NCR's services.

72.    Harris spent hours on weekends and evenings searching for

leads and businesses to solicit, and doing research, as well as putting information into salesforce.com.

73.    Even when NCR did pay overtime wage, it willfully underpaid the ISR, including Harris because NCR failed to include the commissions or bonus earned in the rates of pay as required by the FLSA, and solely paid time and one half of the base pay.

74.    All inside sales representatives were paid pursuant to the same common pay plan:  a base hourly rate quoted in annual sums to the employees, and eligibility for monthly bonuses or commissions on a sliding scale depending upon reaching the maximum target goal of 100%, and decreasing as the producing met less than 100% of the goals, or alternative with some multiplier based upon the production.

75.    Plaintiff, like all ISR in the Atlanta office, was given a set weekly corporate schedule of 45 hours per week, 9 hour days with opportunity to take up to a 1 hour meal break.

76.    Plaintiff routinely worked through much of his 1 hour meal break, including working while eating at his desk, or taking a short break to eat and continuing back to work.

77.   At no time did Defendant explain that working through all or sum of this 1 hour automatically deducted meal break was compensable overtime work hours and which should be reported and paid.

78.   ISR were either instructed to input a 1 hour meal break for each day or just put down a total shift which from start to end for the day was 8 hours.

79.   Assuming like Harris all other ISR were paid on a salary basis, then like Harris since NCR was not going to pay him overtime pay, there was no real concern in attempting to accurately report break times or any basis to do so, since the policy was no more than hours for the day and no more than 40 hours for the week.

80.   Plaintiff found it necessary to stay after the ending shift time and start work earlier than the official start times,  and put in this additional overtime work hours to complete his job duties and communicate with businesses in attempts to obtain sales.

81.   Plaintiff similarly performed work on weekends using his company laptop, answered and sent emails, and such work was not foreclosed, prohibited or discouraged by Defendant.

82.    Moreover, management knew of and encouraged ISRs to perform work outside the office or outside of business hours, to come in early and start working and to stay as late as they needed.  Doing so meant you were a "go getter" and management encouraged people to be "go-getters"

83.    Plaintiff, and all other similarly situated employees are currently now or have previously been covered under FLSA §207 as employees.

84.    Plaintiff routinely worked more than 40 hours in his workweeks, with the knowledge of Defendant, and was never disciplined for doing so, nor was he paid a premium for all such overtime hours worked.

**THE PUTATIVE CLASS**

85.    Plaintiff bring this suit individually, and on behalf of all similarly situated persons composed of the following Class or collective similarly situated members:

**PROPOSED PUTATIVE CLASS:**

**All person working as inside sales representatives (ISR) under the titles of: Inside Sales Representative (I, II or III), Inside Sales Specialist (I, II, III), Sales Development Representative (I,II or III), Account Manager, Account Executive, Sales Manager, Channel Sales Manager or any other job title used to describe persons whose primary job duty was**

**inside sales, who are currently employed or were previously employed with NCR CORP anywhere in the U.S. within the past three years preceding the filing of this lawsuit through to the date of trial.**

**COLLECTIVE FACT ALLEGATIONS**

86.    At the time of this filing, numerous other members of the putative class seek to join this action and demonstrate that there are others similarly situated who seek to join and claim their overtime wages.

87.    Plaintiff is able to protect and represent the Collective or putative Class or classes, and are willing and able, and consents to doing so.

88.    Plaintiff is a proper Class representative of all those similarly situated as he was employed by Defendant under the titles of Sales Development Representative (SDR), and Inside Sales Representative during his employment, and because:   a) he solicited to sell NCR's products, software, hardware and services and including subscription services;  b) he was paid under the same common pay structure/plan applicable to all other inside sales representatives:  a base hourly rate, with monthly percentage to goal commissions and treated as an hourly, non-exempt under the FLSA; c) he routinely worked overtime without being paid a premium for the hours worked, and d) is familiar with Defendant's policies, procedures and

unlawful pay practices.

89.    Upon information and belief, Defendant employed 1000 or more ISR at any given time working from their homes or hired from and reporting to upwards of 36 offices throughout the United States, or whose work was controlled from numerous offices and ultimately from the Corporate office in Atlanta Georgia.

90.    Upon information and belief, during the preceding 3 years all ISR were subject to common unlawful pay practices, including suffering to work off the clock and either instructed to under report their hours or discouraged from reporting all their overtime hours under a company De facto policy.

91.    Defendants' job offer letters to inside sales representatives also demonstrate a common pay plan for inside sales reps:  a base hourly pay, (or a base pay stated as an annualized amount or salary). treatment as non-exempt employees, and eligible for a bonus or commission plan stated as a percentage to goal of incentive cash.

92.    Similarly, all are inside sales representatives were placed in groups, and assigned a supervisory sales manager to report to, and all inside

sales representatives were expected and required to perform their job duties and requirements according to the same national standards and uniform policies and procedures set by the Defendant applicable to all inside sales representatives, aside from any variances due to the specific products or cloud services for the respective customer's produced and services the ISR were soliciting for.

93.    All inside sales representatives within this class described herein are now, and at all times within the preceding 3 years of the filing of this complaint were treated as non-exempt employees and who were assigned to work 9 hour work days, Monday to Friday, and thus 45 hour work weeks.

94.    Upon information and belief, whenever Plaintiff and all other inside sales representatives worked prior to the scheduled shift time, stayed after the shift time ended, or worked through any meal breaks, Defendant monitored, tracked and was fully aware of all employees exceeding 40 work hours, and even encouraged the additional work hours viewing such ISR as "go-getters".

95.    The Defendant maintained a company-wide policy throughout

the relevant 3 year class period of willfully refusing to pay overtime wages or any premium pay for overtime hours worked for inside sales representatives despite, clear knowledge inside sales representatives have worked and continuing to work overtime hours, and as classified under the FLSA, non-exempt employees automatically due such wages.

96.    Upon information and belief, all inside sales representatives are supervised by team leaders and other managers, who very closely monitor performance, scrutinize sales representatives and their performance, metrics, such as phone calls and production and report results to the corporate office under a structured, corporate controlled manner, and all of whom had knowledge of their teams working overtime hours.

97.    Defendant maintained a ***De Facto*** off the clock policy (although there technically was not a time clock system), in which inside sales representatives were told to focus on their bonuses rather than any overtime pay requirements of the FLSA, and placing them in fear of discipline and termination if they ever dared to submit a claim for overtime wages.

98.    At no time during the relevant 3 year time period did Defendant

formally discipline inside sales representatives, including Harris for working off the clock overtime hours.

### COUNT I
### FLSA VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

99.   Plaintiff alleges and incorporates by reference all preceding paragraphs of this Complaint and fully restates and realleges all facts and claims herein.

100.   Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to compensate all inside sales representatives as required pursuant to the FLSA's overtime wage provision, Section 207.

101.   Plaintiff and the proposed class of similarly situated, comprised of all current and former persons who worked for NCR as inside sales representatives, were denied overtime compensation pursuant to FLSA §207 as required to be paid by Defendant for all hours worked over 40 in each and every work week.

102.   Plaintiff and all those similarly situated are employees of Defendant during their time as contemplated by 29 U.S.C. § 203.

103.  Defendant does not, and cannot have a good faith basis for failing to pay Plaintiff and the class of inside sales representatives overtime pay, particularly here when they knew inside sales representatives were working overtime and discouraged them from reporting their overtime hours.

104.  Further, Defendants were aware and clearly knew Plaintiff and the inside sales rep position was a non-exempt position, subject to the time tracking requirements of the FLSA, and automatically required to pay any non-exempt employee overtime premium when they knew or should have known such employees worked any time over 40 hours in a work week.

105.  Plaintiff, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed at rates of one and one half times their regular rates of pay as liquidated damages. See *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

106.  Defendants knowingly and willfully failed to accurately and fully track the hours worked by Plaintiff and the class of similarly situated employees in violation of the FLSA and 29 CFR Part 576.

107.  Defendant encouraged inside sales representatives to work as

many hours as they could to meet or exceed sales goals as long as they did not report more than 40 hours without prior approval, but meanwhile had direct or constructive knowledge of inside sales representatives working overtime hours and more hours than reported on their time sheets.

108.   The FLSA required NCR to pay the overtime wages when they know employees "worked" over 40 hours in any work week, and does not permit an employer to escape or nullify its overtime pay obligations by placing the duty on the employee to formally submit the hours and make a claim for overtime pay.

109.   Regardless, the entire company policies and procedures related to work hours are oppressive, misleading and intended to discourage and prevent inside sales representatives from ever making a request or claim for overtime pay due to fear and intimidation of being terminated from employment.

110.   Defendant made clear to the inside sales representatives that they were not going to be paid overtime wages and that requesting such was going to subject them to heightened scrutiny, discipline and potentially termination of employment.

111.   Defendant at all times material maintained a De Facto policy in which ISR were instructed to falsify time records, underport hours worked, and meanwhile encouraging and permitting ISR to suffer to work off the clock.

112.   Defendant has failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 *et. seq*., including 29 USC Sec. 211(c) and 215 (a).

113.   Defendant knew and had reason to know, that overtime wages are to be paid at one and one half times the employees' regular rates of pay to include all compensation earned but, as a means to save hundreds of millions of dollars in labor costs, willfully chose to either misclassify the inside sales rep position as exempt or simply chose to institute policies, procedures and practices which both discouraged employees against making a claim for overtime pay and by not themselves paying overtime wages when they knew or should have known employees were working overtime without being paid for all hours worked.

114.   Alternatively, even if Defendant paid Plaintiffs and the class of

similarly situated on a salary basis, Defendant knew or should have known that the act of paying Plaintiff and all inside sales representatives a salary instead of hourly pay, that overtime premiums were still required to be paid for all overtime hours NCR knew or should have known were worked by ISR.

115.   Here, Plaintiff and the inside sales representatives are not technically working "off the clock" as Defendants never had any time clock, but, Defendant did maintain a De Facto unwritten policy which was that any submission or claim for overtime would result in disciplinary action, scrutiny and termination of employment, and that the employees were expected to meet their quotas and goals regardless of the hours necessary or they would be fired.

116.   Again, Defendant was well aware that in order to meet quotas and goals, inside sales representatives would have to routinely or even occasionally work overtime hours, and that the inside sales rep position was simply not a 40 hour per week job.

117.   Upon information and belief, even when Defendant did pay overtime wages, they willfully underpaid ISR by failing to include bonuses

or commissions in the calculations and rates paid.

118.   To summarize, NCR has willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiffs and the class of similarly situated employees by:   a) willfully withholding payment of overtime wages when they knew or should have known Plaintiff and the class of inside sales representatives actually worked over 40 hours; b) misleading and falsely advising Plaintiff and other ISR about meal breaks and the requirements under the FLSA; discouraging ISR against reporting more than 40 hours; c) not properly tracking and recording all work hours of inside sales representatives; and d) even when paying overtime wages, willfully underpaid employees by failing to include the value of bonuses or commissions earned in the regular rate and thus the overtime rates of pay.

119.   As a result of NCR's willful violations of the FLSA, Plaintiff and the proposed putative class of similarly situated have suffered economic damages by their willful failure to pay overtime compensation in accordance with FLSA §207 and their created and maintained unlawful pay practices.

120.   Due to NCR's'willful violations of the FLSA, a three-year

statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

121. As a result of NCR's unlawful acts and pay practices, complained of herein, Plaintiff and all other similarly situated present and former employees working as inside sales representatives under various job titles, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated past and present inside sales representatives who worked for Defendants in the 3 years preceding the filing of this complaint to the present, seek the following the following relief:

a.  Designation of this action as a collective action.

b.  That Plaintiff be authorized to give notice of this collective action, or that this Court issue such notice at the earliest possible time; to all past and present inside sales representatives employed by NCR at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class;

c.     Designate the Named Plaintiff as Representatives of the Collective Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

d.     That all past and present inside sales representatives be informed of the nature of this collective action, and similarly situated employee's right to join this lawsuit if they believe that they were or are misclassified as an exempt employee;

e.     That the Court find and declare Defendant in violation of the overtime compensation provisions of the FLSA;

f.     That the Court find and declare Defendant's violations of the FLSA were and are willful;

g.     That the Court enjoin Defendant, Pursuant to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Plaintiff Class.

h.     That the Court award to Plaintiff and the Plaintiff Class, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

i.     That the Court award Plaintiff and all other persons who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

j.     That the Court award Plaintiff a Class Representative service fee

award for the justice they sought out for so many and their services in this case as representatives for the putative class and to their counsel;

k.   That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendant unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendant from further violating the FLSA;

l.   That the Court Award Pre-judgment and post-judgment interest, as provided by law, and;

m.   That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: February 20, 2022.

Respectfully submitted by:

/s/*MITCHELL L. FELDMAN,* ESQ.
GA State Bar#: 25779
**1201 N. Peachtree Street, NE**
**2nd Floor**
Atlanta, Georgia 30361

Tele: (877) 946-8293
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff.*