# FLSA SETTLEMENT AGREEMENT

This is an FAIR LABOR STANDARDS ACT ("FLSA") SETTLEMENT AGREEMENT resolving FLSA overtime wage claims (the "Agreement") entered into by and between the Claimant, Eric Harris individually (the "Claimant"), and Respondent, NCR Corporation ("NCR"), on behalf of themselves, corporate affiliates, subsidiaries, successors and assigns; and each of their respective present and former employees, officers, directors, owners, shareholders, and attorneys (hereinafter collectively referred to as "Respondent" or NCR), and who stipulate and agree as follows:

## PROCEDURAL HISTORY AND OPERATIVE PLEADINGS RESOLVED

On February 20, 2022, an FLSA Section 216(b) Collective Action seeking damages for NCR's alleged willful failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §201*et. seq* ("FLSA") was filed in the Federal District Court for the Northern District of Georgia (the "Court"). [DE 1]. The matter is styled as *Eric Harris Individually, and on behalf of All Others Similarly Situated Who Consent to Their Inclusion in a Collective Action v, NCR Corporation,* Case No. 1:22-cv-00714-SDG (the "Lawsuit"). Pursuant to the Collective Action provisions of the FLSA, Claimant opted into this lawsuit on Feb. 20, 2022 [D.E. 1].

On May 25, 2022, NCR moved to dismiss the Lawsuit and compel the plaintiffs in the Lawsuit to proceed in individual arbitration actions pursuant to the employment agreement and collective action waiver signed by the named Plaintiff and each of the plaintiffs that had opted in. (Lawsuit [DE 17]). Claimant thereafter initiated an arbitration with the American Arbitration Association ("AAA") on Aug. 17, 2022. The Claimant was assigned Case Number 01-22-0003-5151 before Arbitrator Kristine Cato, Esq (the "Arbitration" and the "Arbitrator"). On January 17, 2023, the District Court denied NCR's motion to dismiss, stayed the Lawsuit and ordered this matter to arbitration. (Lawsuit [DE 23])

1

On July 27, 2023, after litigating and conducting discovery in the AAA arbitration, the Parties engaged in an all-day mediation before experienced employment and FLSA mediator Chad Shultz of Gordon Rees Scully Mansukhani, LLP. At mediation, the Parties agreed to resolve Claimant's claim for unpaid overtime wages but reserved the Arbitrator's role and continued appointment (or jurisdiction to the extent applicable) to determine the Claimant's counsel's motion for attorneys' fees and costs to be paid by NCR to the Claimant under the prevailing Plaintiff provision of the FLSA, 29 U.S.C. § 216(b).

## SPECIFIC PROVISIONS

In exchange for the mutual promises contained herein and for other good and valuable consideration, the receipt of which is expressly acknowledged, the parties agree as follows:

1. **Scope of Settlement**. This Agreement resolves the Claimant's claims for unpaid overtime wages and for any alleged violations of the record keeping requirements of the FLSA and applies to any and all claims that the Parties have made or could have made in the Lawsuit or the Arbitration except for claims for attorneys' fees and costs sought by Claimant as a prevailing Plaintiff under the FLSA. The Claimant acknowledges that the payments to be made under this Agreement constitute full payment of any and all backpay, wages and compensation, including interest, penalties, or liquidated damages, that may be due and owing and may be claimed to be due and owing under the FLSA or analogous state law in connection with the Lawsuit and the Arbitration. Except for claims for attorney's fees and costs under the FLSA, the Claimant forever waives, releases, and discharges all rights, claims, or causes of action he or she has or may have against Respondent with respect to any and all unpaid wage and overtime claims Claimant raised and could have raised in the Lawsuit or Arbitration and any other claims specifically released by the terms of this Agreement.

2. **Payment by Respondent and Settlement Terms**.

    A. *Payments to Claimant*.  Subject to the approval of the Arbitrator and the Court, NCR agrees to pay the Claimant a gross sum total of Forty-Three Thousand Nine Hundred, Seventy-Seven Dollars and Forty Cents (

2

$43,977.50 ) in full compromise and settlement of any and all claims for unpaid overtime wages, minimum wages, and/or liquidated damages Claimant had, has, or may have against NCR arising out of his/her employment with NCR. This payment is expressly conditioned upon the Claimant executing this Agreement and upon the Arbitrator and the Court approving this Agreement. The gross sum total of $43,977.50 does not include the payment by NCR of any award by the Arbitrator of Claimant's incurred attorney's fees and litigation costs under the FLSA.

NCR agrees to be responsible for administering the settlement payments and will wire (2) separate settlement payments to Claimant within fourteen (14) days after the Agreement is approved by the District Court, conditioned upon Claimant's timely provision of necessary tax forms and bank account wiring instructions.

Respondent shall prepare and send two settlement payments to the Claimant as follows:

>Check #1: A check in the amount of 50% (1/2) of the gross sum total listed in Section A representing Claimant's claimed unpaid wages. For tax purposes, this amount will be treated as wages subject to employment tax withholdings and for which NCR shall issue a W-2 statement.

>Check #2: A check in the amount of 50% (1/2) of the gross sum total listed in Section A representing liquidated damages. For tax purposes, this amount will not be subject to employment tax withholdings or deductions and for which NCR shall issue a 1099 statement.

>Claimant may elect to submit an updated IRS form W-4 for the tax calculation of the settlement payments above which Respondent will honor, and Claimant will send Respondent a W-9 with current address information and legal name, and wiring instructions for deposit of the payments to Claimant's bank account.

1) *Calculation of Payments to Claimant.* In calculating the Claimant's settlement amount, the Parties relied upon the damages model created

Doc ID: 94a074d4b1c30500436121888ee8c0257801a99d

    by Claimant's Counsel. The model incorporated NCR's timekeeping records for each applicable workweek, NCR's payroll records, Claimant's hourly rate, overtime payments made during applicable workweeks, ESI records of the claimant's work activities and email records exchanged during discovery. Based upon the evidence and numerous depositions taken and available, the Parties agreed to the following terms in calculating the settlement payment owed to Claimant.

    2) *Three-Year Statute of Limitations Applies.*[1] The settlement covers the work weeks within the three-year period immediately preceding the earlier of the date Claimant filed for arbitration or opted into the Lawsuit (the "Qualifying Weeks").

    3) *Liquidated Damages Applies.* The Settlement value contains the inclusion of a liquidated damage payment.

    4) *Wages being Paid by Respondent.* The sum of Claimant's settlement payment was calculated by the multiplication of Claimant's individual hourly rate, inclusion of the non-discretionary bonus/commissions earned during the applicable periods, the Claimant's Qualifying Weeks worked, and the Claimant's estimated hours worked off-the-clock per week.

B. *Attorneys' Fees and Costs.* The Parties agree that Claimant and his counsel shall move for a determination of the amount of any attorneys' fees and costs that Claimant may seek from NCR pursuant to the FLSA.[2] The Parties agree that Claimant's Counsel may file their motion for determination of attorneys' fees and costs no later than 30 days following the issuance of an Order approving this Settlement Agreement or entry of a Consent Judgment by the Arbitrator. NCR agrees to submit its response to the Claimant's motion for attorney's fees and costs within thirty (30) days thereafter. The Arbitrator shall then make the determination of the quantum of any attorneys' fees and costs to be paid to Claimant's Counsel by NCR. NCR shall deliver the awarded or approved attorneys' fees and costs at the latter of the Court approving this Agreement or within twenty-one (21) days following the Arbitrator's award.

---

[1] See 29 U.S.C. 255(a).
[2] *See* Kreager v. Solomon Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985) ("[S]ection 216(b) of the [FLSA] makes fee awards mandatory for prevailing plaintiffs.")

4

Doc ID: 94a074d4b1c30500436121888ee8c0257801a99d

3.     **Claimant's Obligations.**

   A. *Motion for Approval of Settlement and Dismissal of Lawsuit.* First, in further consideration of the benefits conferred to the Claimant under this Agreement and as described in Section 2 above, within three (3) days of the date this Agreement becomes fully executed by the Parties, the Claimant will either file a motion or the parties will file a joint motion seeking approval of this settlement by the Arbitrator.

   B. Following the Arbitrator's approval of the Agreement, the Parties shall submit the Arbitrator's approval to the Court to be adopted, ratified or approved for entry of a judgment.

4. *Release of Wage/Liquidated Damages Claims.* Claimant hereby releases and forever discharges Respondent, their predecessors, parents, subsidiaries, affiliated organizations, and their respective successors and assigns, together with their respective owners, directors, officers, employees, agents, attorneys, insurers, representatives, shareholders, and their respective heirs and personal representatives, (the "Released Parties"), from any and all claims for unpaid wages, unpaid compensation, or liquidated damages he or she has, had, or hereafter may have against Respondent arising out of or based upon their employment with the Respondent (including, without limitation, any and all unpaid minimum wage, overtime, or other unpaid wages or compensation claims under the FLSA, analogous state or local law, or any other statutory, contract, or common law) (the "Released Claims").

5. *No Right to Re-Employment.* Claimant agrees not to apply for, seek, or accept future employment with Released Parties and Claimant waives any right (or alleged right) to employment or re-employment with Released Parties. Should Claimant inadvertently be hired by Released Parties, Claimant acknowledges and agrees that Respondent may terminate Claimant from that employment based upon this agreement.

6. *Non-Admission of Liability.* The Parties acknowledge and agree that the settlement of the claims made by the Claimant (i) does not constitute any admission of liability by the Respondent; (ii) does not constitute an admission by the Respondent of the validity of any of the Claimant's legal or factual contentions; and

5

(iii) are solely for the purpose of avoiding the expense and inconvenience of further proceedings between the Parties.

7. *Neutral Job Reference.* NCR agrees to verify Claimant's dates of employment, provided Claimant directs such requests for employment verification to the "The Work Number" (1-800-367-5690 or theworknumber.com), NCR Company Code 20289

8. *Authority.*  Each Party hereto warrants and represents that each of the persons or entities executing this Agreement is duly empowered and authorized to do so.

9. *Covenant Not to Sue.* In exchange for the consideration in Paragraph 2, Claimant covenants not to sue the Released Parties with respect to all such Released Claims, and shall be permanently barred and enjoined from directly, indirectly, or through a third party, asserting, commencing, prosecuting, instituting, reinstituting, intervening in, assisting, instigating, encouraging, soliciting, supporting, or in any way collaborating or participating in, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, against any of the Released Parties whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity, that in any way relates to, is based upon, arises from, or is connected with any Released Claims. Nothing contained herein shall, however, bar or enjoin the Claimant from bringing any action or claim to enforce the terms of this Agreement.

**10. Miscellaneous Provisions.**

   A. *Drafting*.  Each Party hereto has cooperated in the drafting and preparation of this agreement.   Hence, in any construction to be made of this Agreement, the same shall not be construed against any Party as drafter of this Agreement.

   B. *Incorporation of Exhibits*.  All exhibits attached to this Agreement are hereby incorporated by reference as though set forth fully herein and are a material part of this Agreement.  Any notice, order, judgment, or other exhibit that requires approval of the court must be approved without material alteration.

   C. *Own Counsel*.  Each Party hereto acknowledges that he, she, or it has been represented by counsel of his, her, or its own choice throughout all of the negotiations that preceded the execution of this Agreement and in connection with the preparation and execution of this Agreement.

6

Doc ID: 94a074d4b1c30500436121888ee8c0257801a99d

D. *Further Acts and Documents*.  The Parties hereto agree to do such acts and execute all such documents necessary to effectuate the intent of this Agreement.

E. *Waiver of Trial by Jury*.  The Parties knowingly, voluntarily, and intentionally waive any right they may have to a trial by jury with respect to any litigation based upon, or arising out of, under, or in connection with this Agreement, including any document contemplated to be executed, or any underlying matter, course of dealing, statement (whether verbal or written), or action of the Parties related to this Agreement.

F. *Entire Agreement*. This Agreement, including the exhibits, represents the sole and entire agreement between the Parties and supersedes any and all prior agreements, negotiations or discussions between the Partis and/or their respective counsel with respect to the subject matter covered in this Agreement.

G. *Informed, Voluntary Signature.*  In entering into this Agreement, the Claimant, on behalf of himself/herself represents that, before executing this Agreement, he/she has completely read all the terms herein and that they fully understand and voluntarily accept the terms after having the opportunity to consult with his/her attorneys in this action.  The Claimant acknowledges and agrees that he/she has received a reasonable period of time to consider this Agreement and that the subsequent discovery of any facts whether or not existing on the date of this Agreement and no matter how material, shall have no effect on the validity of the Agreement.

H. *Attorneys' Fees and Costs.*    Other than as set forth in Section 2, above, the Parties agree to bear their own attorneys' fees and costs in connection with the Lawsuit, including in the preparation and implementation of this Agreement. However, in the event that either party institutes an action to enforce any provision contained in this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs from the other party, including any fees and costs on any appeal(s), including action to collect upon the payment of all sums due or owed to the Claimant.

7

I. *Forum or Jurisdiction:*  Any action to enforce the terms of this agreement may be presented to the AAA Arbitration/Arbitrator or the Northern District of Georgia pursuant to the Lawsuit.

The Parties agree that this Agreement shall be interpreted and enforced in accordance with Georgia law and federal law applicable to FLSA actions.

J. *Severability*: If one or more paragraph(s) of this Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions or terms of the Agreement, which shall remain in full force and effect.

K. This settlement is contingent upon the District Court's approval of this Agreement or the Court's adoption of the Arbitrator's approval of this Agreement. If for any reason, the Arbitrator or the Court rejects or will not approve the Settlement Agreement in its entirety, the Parties agree to engage in good faith discussions within 10 days thereafter to explore further options for reaching an agreement and resubmitting the same for approval by the District Court.  Further, if the Court disapproves of this Agreement, then all parties are discharged of any and all obligations they have under the terms of this Agreement.  Alternatively, the Parties may agree to forego District Court approval and comply with the Arbitrator's ruling.

L. *Enforcement and Any Breach of Agreement*: The Parties agree that the District Court should retain jurisdiction for a period of 60 days to oversee the Parties' compliance with the terms of this settlement and if needed to enforce the terms of this Agreement and the payment of any attorney's fees and costs awarded to the Claimant's Counsel, or if settled by the Parties, the sums Respondent agrees to pay the Claimant's Counsel.  In the event the Court does not retain jurisdiction, any action to enforce the terms of this Agreement may be presented to the Arbitrator in the AAA Arbitration or the Northern District of Georgia Federal Court.

M. It is understood and agreed that this Settlement Agreement may be executed in multiple identical counterparts, each of which shall be deemed an original for all purposes. Digital signatures, photocopy, and facsimile copies of any such signed counterparts may be used in lieu of the original for any purpose.

Doc ID: 94a074d4b1c30500436121888ee8c0257801a99d

N. *No Representation As To Tax Consequences*. The Parties expressly understand and agree that no representations regarding the tax consequences of this Agreement or this settlement have been made by any Party to another Party, and that each Party should rely only on the advice of that individual's tax advisors regarding the tax consequences of this Agreement.

**Signatures**

*Eric Harris*             08 / 16 / 2023

Claimant, Eric Harris             Date

*Dacia O. Edmondson*
Dacia O. Edmondson (Aug 23, 2023 11:45 EDT)

Name: Dacia O. Edmondson             Date Aug 23, 2023
Title: General Manager
As Authorized agent and representative
Of NCR Corp.

9