AMERICAN ARBITRATION ASSOCIATION

ARBITRATION OF THE DISPUTE BETWEEN:

| | |
|---|---|
| ROSEANN ADAMSON, | ) |
| | ) |
|    Claimant, | ) |
| | ) |
| v. | )   CASE NO. 01-22-0003-7312 |
| | ) |
| NCR CORP., | ) |
| | ) |
|    Respondent. | ) |

# ORDER AWARDING ATTORNEYS' FEES AND COSTS

On August 27, 2023, following successful mediation of the liability issues in this case, I approved a stipulated judgment settling Claimant Roseanne Adamson's claims against Respondent NCR Corporation, in the amount of $28,873.85. As stated in that Order, Ms. Adamson is deemed a "prevailing party" under the FLSA, and I continued the arbitration solely to determine the amount of attorneys' fees and costs to be awarded to her.

Despite advising the parties that they should be mindful of the Supreme Court's admonition that fee disputes should not be permitted to mushroom into "a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), they have submitted to me a mountain of briefs and supporting documentation ostensibly pertinent to my determination of a fair and reasonable award of fees and costs. I have reviewed and considered all of this information, and issue the following **ORDER**:

1. There can be no doubt that Claimant is entitled to an award of a reasonable amount of fees and costs in this matter. 29 U.S.C. § 216(b) (in addition to the liability judgment, a court "shall allow a reasonable attorney's fee to be paid by the defendant"); *see also Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 n.12 (11th Cir 2007).

2. As a starting point, I find that the amount of costs requested by Claimant is reasonable, and shall be awarded in its entirety. This comes to a total of $3,276.81 in costs originally requested, plus the supplemental costs amount of $437.08 requested on December 19, 2023.[1] Hence, I **AWARD** Claimant a total of **$3,713.89** in costs.

3. The starting point for determining the amount of a "reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461

---

[1] Technically, Claimant's supplemental submission for "fees on fees" was not transmitted to the Arbitrator until the morning of December 19th, after the AAA issued a notice late afternoon on December 18th that the record was closed. Having not thought about the likelihood of such a supplemental submission from Claimant, I had advised the AAA that they could close the record. That was my error, and Claimant should not be prejudiced by that error with respect to the supplemental submission. As noted to the parties by my email earlier today, there was no need to allow for further briefing on this issue, as the law in this circuit is clear on the availability of "fees on fees."

U.S. at 433 (product of these two factors is the "lodestar" amount); *see also Reyes v. Aqua Life Corp.*, 632 F. App'x 552, 556 (11th Cir. 2015) (reasonable fee award is determined by "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate").

4. Where the lodestar amount is based on a reasonable hourly rate and a reasonable number of hours, that lodestar amount presumptively is the fee to be awarded. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986). Where, however, the requested hourly rate and number of hours are excessive or unreasonable, it is the responsibility of the court (or arbitrator) to refine the calculation so that the amount awarded is in fact reasonable. *See, e.g., Hensley*, 461 U.S. at 434 (determining the number of hours reasonably expended requires the exclusion of time that is "excessive, redundant or otherwise unnecessary"); *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1983) (award should exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*") (emphasis in original).

5. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis"; rather, "it may reduce [the hours] in gross if a review of the resubmitted fee request warrants such a reduction")); *cf. Fox v. Vice*, 563 U.S. 826, 838 (2011) (§1988 case regarding fees to defendant for frivolous claims; "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").

6. It is improper, however, for the court to exclude time on an hour-by-hour basis and then also apply an across-the-board cut to the same hours claimed in the fee petition that have been subjected to the hour-by-hour review and reduction. *Bivins*, 548 F.3d at 1351-52.

7. Having reviewed the entire record presented by the parties in this fee dispute, I **FIND** that reductions are required in both the hourly rates requested and the number of hours claimed in order to arrive at a reasonable attorney's fee to be awarded.

8. Given the voluminous record before me, I will apply the "across-the board" approach to reducing the hours requested.

9. **Reasonable Hourly Rates:**

    a. Claimant requested fees based upon an hourly rate of $450 per hour for Mr. Feldman, $450 per hour for Mr. Williams, and $350 per hour for Mr. Quintus.[2]

---

[2] In their reply brief, Claimant switched gears and requested that the hourly rates be set at $690 for Mr. Feldman, $650 for Mr. Williams, and "at least" $500 for Mr. Quintus. This is not a proper request to be contained in a reply brief. The permitted scope of a reply is to respond to arguments raised in the response brief that were not adequately anticipated and countered in the principal brief. As the parties are aware, I do not normally allow reply briefs in the first place, and I certainly will not countenance Claimant's request in their reply that the attorneys' hourly rates be set roughly 50% higher than originally requested.

b. Claimant submitted ample support for a rate for Mr. Feldman and Mr. Williams of at least $400, including but not limited to their attestations that they each charge $400 per hour for fee-paying clients. Reviewing this material in its entirety, I **FIND** that a reasonable hourly rate for the attorneys' work in this case is as follows:

   i. Mr. Williams -- $425
   ii. Mr. Feldman -- $425
   iii. Mr. Quintus -- $325

c. My determination of the $425 hourly rate for Mr. Williams and Mr. Feldman reflects a modest increase above the rate they reportedly charged to fee-paying clients when this case began. This increase is appropriate based on the inflationary legal fee environment generally, and the other evidence in the record supporting such a higher billing rate.

d. Based on the rates awarded to Mr. Feldman and Mr. Williams, I set the rate for Mr. Quintus at $100 lower than each of them, which maintains the spread between them originally requested by Claimant. This rate appears reasonable based on the content reflected in his limited time entries in this case.

10. **Hours Reasonably Expended:**

   a. The litigation of this case has had many twists and turns for a comparatively straightforward Off-the-Clock ("OTC") case under the Fair Labor Standards Act ("FLSA"), which have resulted in a higher fee request than one would expect. Some – but certainly not all – of these circumstances can be laid at the feet of inefficiencies by Claimant's counsel.

   b. **Settling or Not**:

      i. The sniping between the parties in the fees briefing (and the extensive supporting documentation) reflects a fundamental misunderstanding of the manner in which one determines the factors that are relevant to establishing the Claimant's fee award.

      ii. First and foremost, Claimant's repeated attacks on Respondent's decision to litigate separately its 10 related FLSA cases, rather than settle them early on in the multiple arbitrations, are inapt. Settlement is a voluntary matter, and the decision not to settle is not a basis for awarding punitive amounts of fees to the ultimately prevailing plaintiff.

      iii. By the same token, however, a Respondent's decision not to settle until after a certain stage of the litigation brings with it a responsibility to pay the prevailing plaintiff's fees reasonably incurred at any time prior to the ultimate judgment – whether achieved through settlement or litigation to the "bitter end." Further, there certainly is nothing inappropriate about a Claimant attempting to leverage that impending responsibility in her settlement negotiations; doing so is not improper "blackmail," and does not prove an intention to improperly run up the fees necessarily incurred in moving forward with the arbitration.

      iv. Accordingly, I have paid no attention to the vituperative communications between the parties that surround their back-and-forth on settlement as the case commenced, and have made no reduction in time on the basis of this alleged factor.

  c. Having reviewed at length the billing records submitted by the Claimant's counsel, I generally find that those records reflect a reasoned approach to billing time directly attributable to Ms. Adamson's case, on the one hand, and allocating to Ms. Adamson a pro-rata share of time attributable to the 10 cases collectively, on the other. (That is not to say, however, that I accept at face value all the time entries collected in either the "Adamson" or the "ALL" category.)

  d. The starting point for the determination of hours reasonably expended is the amount requested by Claimant in the Amended Motion for the time of Mr. Feldman and Mr. Williams.[3]

  e. Having reviewed those time entries in detail, I **FIND** that certain reported hours were not reasonably expended on Claimant's behalf, and warrant a reduction in the fee award:

      i. Whether or not Claimant's counsel actually knew of Claimant's arbitration agreement (and those of her coworkers who are claimants in the related arbitrations) before filing the *Harris* class action complaint in federal court, counsel are charged with constructive knowledge of that key fact. Hence, the *Harris* case was not properly filed in that forum, and time expended litigating there is not time reasonably expended in this arbitration.

      ii. Claimant's initial written discovery requests were plainly excessive, and commenced an unnecessary expenditure of time by both parties.

      iii. Claimant's overly broad opposition to a comparatively straightforward proposed protective order caused unnecessary and protracted debates over the issue, and ultimately delayed the production of information necessary to enable depositions to move forward.

      iv. Claimant's attempt to obtain multiple redundant 30(b)(6) depositions in the various related cases defeated the efficiency that is at the core of resolving disputes by arbitration, and unnecessarily multiplied the fees incurred by both parties.[4]

      v. Although ostensibly "corrected" in the Amended Motion for Attorneys' Fees and Costs, the numerous occasions of days with reported hours in excess of 16 hours in a single day (across the 10 related cases) in the Claimant's original motion suggest an inattention to detail and accuracy in counsel's billing records.[5]

---

[3] Respondent is not challenging the 11.00 hours attributed to Mr. Quintus. *See* Respondent's Response Brief at 1 n.1.

[4] In addition, I **FIND** that the list of topics appended to the original 30(b)(6) deposition notice was clearly excessive, which further delayed matters and drove up the fees of both parties.

[5] I make no finding of intentional misconduct with respect to these billing entries. Indeed, an occasional day of billing greater than 16 hours is not even necessarily an error, as such days truly happen from time to time in the practice of law. But the two reported 34-hour days – clearly erroneous – certainly cast doubt on the overall accuracy of the timekeeping reports. Presumably, these reports were analyzed, reviewed and verified before submitting the fee claims to the various arbitrators. Moreover, I find it highly concerning that when the errors were "corrected,"

      vi. Although I do not find it inappropriate for Claimant to retain out-of-town counsel, and do not disallow the travel expenses incurred due to that selection, I consider it improper for Claimant's counsel to bill their full hourly rate for time incurred traveling, even when apparently not otherwise actively working on the case. Appropriate billing discretion calls for such time either to be written off or written down.[6]

f. Claimant's original brief in support of the attorney's fees request, the amended principal brief, and the reply brief ALL exceeded the page limitations I established in my Orders governing briefing of the fees and costs issues. This caused additional time unnecessarily to be incurred by Claimant, by Respondent, and by the Arbitrator.

g. A meaningful amount of the time billed, particularly by Mr. Feldman, was spent poring through and analyzing data and documents, handling written discovery, performing legal research tasks, etc. Some appreciable portion of this work could have more appropriately been handled by an associate or legal assistant, at a lower billing rate. As a solo practitioner for nearly a decade, I recognize that when there are no lower-priced staff available to whom one can hand off "lesser" tasks, the partner often must do that work himself. But when that happens a discretionary reduction in the hours billed is appropriate.[7]

h. By contrast, I **FIND** that no reduction in the hours requested is appropriate with respect to the following issues raised by Respondent:

      i. There is nothing inappropriate about two partner-level plaintiff-side attorneys in different firms sharing responsibility for a set of 10 related cases such as these. Many such attorneys do not have a deep bench of junior attorneys in their firm to whom they can delegate work, and even if they have such staff, other case responsibilities often get in the way of optimal staffing within one firm. (But, as noted above, staffing decisions may have discretionary billing consequences.)

      ii. It is not inappropriate for co-counsel in such cases to bill for time incurred in strategizing together and otherwise collaborating on the work.

      iii. The billing for the Motion to Strike NCR's optional answer is legitimately billable. Whether Respondent's pleading was "optional" or not, once NCR put such a pleading on the record Respondent was responsible for the legitimacy of the defenses asserted therein.

      iv. What Respondent identifies as "billing for abandoned discovery" is, in my opinion, a misnomer. It appears to me that Claimant's efforts to obtain discovery from the two third parties, and my rulings related to those efforts, may have had an impact on Claimant obtaining valuable information about phone call records that ultimately contributed to the successful mediation of

---

the total fee request was hardly reduced at all – much less in any appreciable fashion – as counsel took that opportunity to fill in numerous blanks contained in the original submissions, which presumably already had been carefully flyspecked before submitting them to the arbitrators.

[6] As an example, in my own arbitrator fee disclosures, I advise that I bill the parties at 50% of my normal rate for any non-working travel time.

[7] Alternatively, I could have handled this issue by assigning a somewhat lower "blended" billing rate for Mr. Feldman to account for this aspect of his work.

       the action. Whether this view is accurate or not, the issue Claimant raised was a legitimate one, and the fact that the case was resolved before the third-party issue ultimately had to be resolved through a subpoena duces tecum for those third parties to testify at the arbitration hearing, does not warrant Claimant's counsel's time expended on that effort being deemed "unreasonably expended."

   v. The billing on selecting an arbitrator is time legitimately expended, and was not obviously excessive.

   vi. Claimant's billing regarding the notice of settlement was not excessive.

   vii. Billing related to the motion for attorney's fees and costs is legitimately compensable. This includes time incurred litigating the fees and costs issues, as requested in Claimant's supplemental request received on December 19, 2023. (But note the statement above regarding excessive time incurred due to Claimant's failure to comply with the Arbitrator's instructions regarding the briefing of these issues.)

i. I do not find it necessary or appropriate to engage in a detailed forensic examination of exactly how many hours should be deducted from those identified by Claimant's counsel. Having looked carefully at the hourly billing reports, I find that the number of hours reported by Mr. Feldman and Mr. Williams each should be reduced by an "across-the-board" cut of 32.5%.

j. Accordingly, I **FIND** that the amount of attorneys' fees to be awarded to Claimant may be calculated as follows:

   i. For Mr. Feldman: 101.20 "Adamson" hours + 44.33 "Apportioned" Hours +18.84 "Supplemental" Hours = 164.37 Total Hours X 67.5% = 110.95 Awardable Hours X $425/hour = $47,153.75

   ii. For Mr. Williams: 69.80 "Adamson" hours + 19.68 "Apportioned" Hours + 6.96 "Supplemental" Hours = 96.44 Total Hours x 67.5% = 65.10 Awardable Hours X $425/hour = $27,667.50

   iii. For Mr. Quintus: 7.90 "Adamson" hours + 3.10 "Apportioned" Hours = 11.00 Total Hours X $325/hour = $3,575.00

   iv. This makes the total fee award $47,153.75 + $27,667.50 + $3,575.00 = $78,396.25

11. Hence, I **AWARD** Claimant a total of **$78,396.25** in attorneys' fees.

12. Accordingly, the **TOTAL AWARD** to Claimant in costs and attorneys' fees is **$82,110.14**.

**SO ORDERED** this 20th day of December 2023.

*Geoff Weirich*
Geoff Weirich, Arbitrator