**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION TRIBUNAL**

| | |
|---|---|
| **LADAWN RAY,** | |
| **Claimant,** | **Case No.: 01-22-0003-5696** |
| **v.** | **FINAL AWARD ON** |
| | **ATTORNEYS' FEES AND** |
| **NCR CORPORATION,** | **COSTS** |
| **Respondent.** | |

## FINAL AWARD ON ATTORNEYS' FEES AND COSTS

Claimant LaDawn Ray ("Claimant" or "Ray"), represented by Mitchell Feldman of

Feldman Legal Group and Ben Williams of Williams Law P.A., and Respondent NCR

Corporation ("Respondent" or "NCR")[1], represented by Doug Gilfillan of Kilpatrick Townsend

& Stockton LLP, selected Sherri L. Kimmell to serve as the Arbitrator in an arbitration filed by

Claimant to recover overtime compensation from Respondent pursuant to the Fair Labor

Standards Act ("FLSA").[2]

Following a mediation on July 27, 2023, the parties entered into an FLSA Settlement

Agreement in which Respondent agreed to pay $26,424.13 to settle Claimant's claims. As part of

the Settlement Agreement, the parties agreed the Arbitrator should decide the amount of

---

[1] On page one of Respondent's <u>Response in Opposition to Claimant's Motion for Fees and Costs</u>, Respondent noted that NCR Corporation is now known as NCR Voyix Corporation.

[2] LaDawn Ray is one of ten former employees of NCR Corporation who initiated an arbitration to recover unpaid overtime under the FLSA. The claims were initially filed in the Northern District of Georgia as part of a collective action, which was stayed, following NCR's assertion of its right to arbitrate the claims individually through the American Arbitration Association. While the arbitrations proceeded on similar timelines and with identical counsel representing the parties, the parties did not agree to a single process arbitrator, nor did they agree to coordinate discovery among all arbitrations. Each arbitration involved a single claim by a single individual decided by a single arbitrator.

attorneys' fees and costs, if any, to be awarded to Claimant's counsel following the filing of a motion by Claimant and a response from Respondent. Claimant filed her Motion for Attorney's Fees and Costs and Incorporated Memorandum of Law on September 20, 2023, and an Amended Motion for Attorney's Fees and Costs and Incorporated Memorandum of Law on October 27, 2023. Respondent filed its Response in Opposition to Claimant's Motion for Fees and Costs on November 15, 2023. Claimant was permitted to file a Reply, which was filed on December 8, 2023. In her Amended Motion, Claimant seeks to recover $78,204.50 in fees and $563.12 in costs.[3] In Claimant's Request for Supplemental Attorneys' Fees and Costs, Claimant seeks to recover fees for an additional 10.74 hours for Mr. Feldman and 10.06 hours for Mr. Williams. Respondent does not dispute Claimant's entitlement to recover fees and costs, but rather the amount that should be awarded.

Having been designated in accordance with the parties' Arbitration Agreement and Class, Collective and Representative Action Waiver and having duly heard the proofs and allegations of the parties and their representatives, Sherri L. Kimmell, Arbitrator, hereby issues the following findings and AWARD on Claimant's Amended Motion for Attorneys' Fees and Costs and Incorporated Memorandum as follows:

## I. Parties' Arguments Regarding Fees and Costs

The parties have submitted extensive briefs and hundreds of pages of exhibits, declarations, analyses and expert affidavits and declarations to support their arguments regarding the amount of fees and costs which should be awarded to Claimant.[4] The Arbitrator has reviewed

---

[3] In her Motion, Claimant claims her costs totaled $563.12, but Exhibit 31 attached to Claimant's Motion documents a cost total of $490.22.

[4] Claimant supplied the expert opinion of Gregg Shavitz, a partner at Shavitz Law Group, LLC, to support her argument that counsel is entitled to all fees charged and an increased hourly rate. Respondent supplied the expert opinion of James D. Horst, a partner at Krevolin & Horst, LLC, to support its argument that Claimant's fees should be reduced by 75% and Claimant's counsels' hourly rates reduced.

all of the materials submitted by the parties. For ease of reference and efficiency, the Arbitrator summarizes the parties' arguments as follows:

A. Claimant's Arguments

Claimant argues she is entitled to the full amount of attorneys' fees and costs claimed and such amounts should not be reduced.[5] In her Motion, she presents the following arguments in support of her position:

1. Claimant has exercised billing judgment in presenting her fee request and any award of less than 70% of the fee request would be "patently unfair, manifestly unjust and wholly unreasonable." Claimant's Motion, p. 2.

2. NCR drove up the costs of litigating this arbitration by refusing to cooperate in discovery. Specifically, by lying about the available electronically stored information ("ESI") and refusing to provide phone records showing when Claimant worked.

3. NCR failed to provide a qualified corporate representative for its Federal Rule of Civil Procedure 30(b)(6) deposition who had knowledge regarding the specific categories requested by Claimant, necessitating additional work by Claimant's counsel to obtain needed information.

4. NCR failed to cooperate in discovery, objecting excessively to Claimant's interrogatories and failing to provide requested information.

5. NCR failed to engage in early efforts to resolve Claimant's claims, instead electing to defend against the FLSA claims, which increased Claimant's legal fees.

Claimant noted in her amended Motion for Fees and Costs that the originally filed Motion contained errors due "largely to misdating certain billing entries, data-entry errors and

---

[5] Although Claimant seeks to recover the full amount of fees and costs, in her Motion she notes that she previously offered to settle the fee issue for 70% of the fees claimed. In addition, in the Motion Claimant argues that anything less than an award of 70% of the fees claimed would be an injustice to Claimant and her counsel.

inadvertent oversight." Claimant's Amended Motion, p. 1. The adjustments and additional exercise of "billing judgment" resulted in a reduction in fees of $1,188 from $79,392.50 to $78,204.50. Claimant's fee amount is comprised of 117.53 hours for Mitchell Feldman at an hourly rate of $450, 51.98 hours for Ben Williams at an hourly rate of $450 and 5.5 hours for Jason Quintus at an hourly rate of $350. The billing records provided in Claimant's Exhibit B show 5.6 billable hours for Jason Quintus. Given that Claimant asserted a claim for 5.5 hours for Jason Quintus and Respondent has no objection, the Arbitrator will use the hourly amount provided in Claimant's Motion and agreed to by Respondent. In her supplemental filing, Claimant requested fees for an additional 10.74 hours for Mr. Feldman and 10.06 hours for Mr. Williams.

According to Claimant, in the arbitration, Claimant asserted a claim for unpaid overtime under the FLSA and sought to recover $47,137, plus liquidated damages. In the settlement, Claimant recovered $26,434.13, which represents 27% of her originally claimed damages.[6]

B. Respondent's Arguments

Respondent argues Claimant's fee request should be reduced for the following reasons:

1.    Claimant's bills contain numerous examples of unnecessary, inflated and excessive billing. The total hours claimed for preparing discovery and other documents common to all ten arbitrations is oversized given the lack of variation among the filings. In addition, Claimant's counsel invested time in unnecessary work, including filing the original collective action in the Northern District of Georgia and moving to strike NCR's Answer in the arbitration. The "All" billing statements contain duplicate entries for time entered in each individually filed

---

[6] According to Respondent, Claimant originally sought damages in the amount of $143,160.20, in which case Claimant's recovery of $26,434.13 represents an 18% recovery of her originally claimed damages. Claimant appears to have amended her damages claim on June 28, 2023 to $47,137 plus an equal amount in liquidated damages to account for paid time off, holidays and leave and overtime previously paid by NCR. See Claimant's Exhibit 24.

arbitration.[7] When viewing the individual billing statements for each of the ten arbitrations, it appears Claimant's counsel also billed for the same work across multiple arbitrations. A comparison of the bills across all ten arbitrations shows eleven days on which individual counsel billed more than seventeen hours in a day.[8]

2. The attorneys' billing records are unreliable and contain numerous errors as evidenced by the fact that, in revising the Motion for Fees, Claimant's counsel added new time and increased time for other entries, without disclosing, explaining or supporting those changes. Respondent argues the Arbitrator cannot have any confidence that the billing provided by Claimant's counsel was created contemporaneously or contains accurate information.

3. Claimant often billed for two experienced attorneys for the same event or transaction when the work should have been completed by one attorney or a paralegal or administrative assistant.

4. Claimant's counsel over-litigated the arbitration by serving overly broad requests, requesting multiple depositions across concurrently filed arbitrations, conducting basic, unnecessary research, and manufacturing disputes about the proposed protective order, ESI and other issues.

5. Claimant's counsel intentionally inflated fees by making duplicative requests across the ten arbitrations. Respondent suggests that Claimant's counsel used the multiple arbitrations to hide inflated fees.

6. Claimant's counsel exercised no "billing judgment" as evidenced by the inclusion of

---

[7] The "ALL" billing statements record work performed by Claimant's counsel on behalf of all clients who previously worked for NCR and were represented by Mitchell Feldman and Ben Williams, and the ALL time was divided evenly among all ten claimants.
[8] In its amended filing, Claimant's counsel adjusted certain of these billing entries affecting the number of days on which counsel billed more than seventeen hours.

multiple .1 entries of time, calls and conferences between counsel, email review and basic research. Claimant's counsel should have reduced or deleted travel time, time spent on third party subpoenas which Claimant elected not to pursue, time spent selecting arbitrators, time spent drafting basic responses to NCR's Requests to Produce, time spent preparing the Notice of Settlement, time spent on "file review," and time spent preparing Claimant's Motion for Fees and Costs.

7. Claimant's counsel bills its fee-paying clients at $400 an hour rather than $450 an hour. Respondent argues the hourly rates charged by Mitchell Feldman and Ben Williams should be reduced to $400, and the hourly rate charged by Jason Quintus should be reduced to $300 and that the hours billed by Mitchell Feldman and Ben Williams should be reduced by 75%. By comparison, Respondent notes that it's counsel charged $25,100.12 in fees to defend NCR in the arbitration. This amount does not reflect the time spent by NCR's in-house counsel on this matter or time billed after August, 2023.

C. Claimant's Reply

In her Reply, Claimant offers the following responses and additional information:

1. The Arbitrator should exercise her discretion to increase Mitchell Feldman's hourly rate to $690, increase Ben Williams's hourly rate to $650 and increase Jason Quintus's hourly rate to $500 to bring the rates in line with the market rate in Atlanta and the rates charged by Respondent's counsel.

2. An "apples-to-apples" comparison of the fees charged by Claimant's counsel to the fees charged by Respondent's counsel requires the Arbitrator to consider the time spent by in-house counsel. Considering the time expended by Respondent's in-house counsel, Claimant's counsel billed 1,977.3 hours to pursue the claims asserted in the ten different arbitrations and

Respondent's counsel "billed" 1,387 hours of time to defend against the same claims. Respondent's time entries do not include time after August, 2023.

3. Claimant's counsel made minor corrections in its Amended Motion to correct entries with no time inputted, correct misdating and exercise billing judgment to reduce billing entries which were too high. The adjustments affected less than 8% of the total billing entries for all ten arbitrations. In this arbitration, Claimant's counsel adjusted eight entries.

4. Claimant challenges the credentials of Respondent's expert, asserting Mr. Horst lacks expertise in FLSA matters. Instead, the Arbitrator should consider the expert opinion offered by Gregg Shavitz, who has litigated over 1,000 FLSA cases in arbitration.

5. Respondent has challenged the total fees claimed by all claimants rather than the specific fees claimed by Ray in this arbitration and has failed to challenge a single billing entry in this arbitration as unnecessary or duplicative. The Arbitrator has the authority only to decide the fees owed in this arbitration and should not consider information related to other arbitrations.

6. Claimant responded to Respondent's specific challenges to fees as being excessive as follows:

(a) The district court case filed by Eric Harris was necessary to initiate an action against Respondent and recruit additional claimants, and the Stay requested by Claimant provided a judge to approve the final settlement agreement, which Respondent required.

(b) Time Claimant spent challenging Respondent's meritless defenses in its Answer was necessary to extinguish the defenses and ultimately facilitated a settlement.

(c) Time Claimant spent on written discovery was necessary to tailor the discovery to each individual claimant as was time spent perfecting the 30(b)(6) request.

(d) Time billed for communication between counsel was necessary and appropriate given

counsel worked for two separate law firms and billing time for travel was necessary given Claimant's counsel's location and skill set.

(e) Time related to challenges to Respondent's proposed protective order was appropriate to challenge language included in the proposed order.

(f) Time related to requested and later abandoned third party subpoenas was instrumental in obtaining Respondent's cooperation in providing records from Salesforce.

(g) Time billed for selecting arbitrators was necessary and within reasonable bounds, especially given Respondent's requirement that each arbitration proceed individually with a separate arbitrator.

(h) Time billed for responding to Respondent's discovery, file review, preparing the Notice of Settlement and preparing the fee motion was not overstated or unreasonable and is within the bounds of recoverable fees.

## II.    Relevant Law Regarding an Award of Attorneys' Fees and Costs and Consideration of the Parties' Arguments

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Where the claimant prevails, attorney's fees and cost awards are mandatory under the FLSA. Respondent does not contend Claimant is not entitled to attorneys' fees. As noted in the Arbitrator's Order dated August 24, 2023 approving the parties' settlement, Claimant is the prevailing party. Thus, Claimant has a right to recover her attorneys' fees and costs in connection with her FLSA arbitration for unpaid overtime.

Attorneys' fees are typically calculated using the lodestar method, multiplying the number of hours worked by the reasonable hourly rate of counsel. "The starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours

reasonably expended by a reasonable hourly rate." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); See also, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) abrogated on other grounds by *Gisbrecht v. Barnhart,* 535 U.S. 789, 795-805 (2002).("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.") Thus, to determine the fees which should be awarded to Claimant the Arbitrator must determine (1) the reasonable hourly rates for Claimant's three attorneys; and (2) the number of hours reasonably expended on Claimant's claims.

    <u>1. Reasonable Rate</u>

    "A reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999). The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed. *Cullens v. Georgia Dep't. of Transp*., 29 F.3d 1489, 1494 (11th Cir.1994). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)(citations omitted).

    "The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)(citations omitted). The court can look either to affidavits or to "its own knowledge and experience

concerning reasonable and proper fees" to form an "independent judgment" of the reasonableness of the hourly rate. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1303 ("It is perfectly proper to award attorney's fees based solely on affidavits in the record.").

In its Amended Motion, Claimant's counsel states that a reasonable rate for Mitchell Feldman and Ben Williams is $450 and a reasonable rate for Jason Quintus is $350. In its Reply, Claimant's counsel asserts that a reasonable rate for Mitchell Feldman is $690, a reasonable rate for Ben Williams is $650 and a reasonable rate for Jason Quintus is $500. Claimant's expert, Gregg Shavitz, posits that the increased rates are appropriate given rates charged by similarly experienced attorneys in the Atlanta market as well as the rates charged by counsel representing the Respondent.

Throughout 2022, Mr. Feldman and Mr. Williams charged their fee-paying clients $400. Sometime in 2023, Mr. Williams increased his hourly rate to $450. "In this circuit, where there is a delay, the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)(citations omitted). Attorneys representing individuals in FLSA claims in the Atlanta market regularly charge and receive $450 or more per hour for their work, as shown in the cases cited in Claimant's Amended Motion. As noted in Claimant's Reply, Mr. Gilfillan charged Respondent $690 per hour.

Respondent objects to paying Claimant's counsel more than the hourly rates they charged their fee-paying clients. While "[a]n attorney's normal billing rate "is the best evidence of his [or her] market rate, … that information is not necessarily conclusive." *Barker v. WBY, Inc.*, 1:18-

cv-2725-MLB (N.D. Ga. Sep. 15, 2021) citing *Weissinger v. Murray*, 2009 WL 1971612, at *4; see also *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [an attorney] charges clients is powerful, and perhaps the best, evidence of his [or her] market rate….") As noted by Respondent, Mr. Williams and Mr. Feldman are not located within the Atlanta area. Thus, their rate of $400 may reflect the economics of the markets in which they typically seek clients. Respondent cannot ask to be charged the cheapest rate Claimants' counsel has charged during the pendency of the arbitration in the least expensive market. A rate of $450 an hour is a reasonable rate for legal work in the Atlanta market.

Similarly, Claimant's counsel cannot recover a higher rate charged in a more expensive market if that is not the rate the attorneys would charge their fee-paying clients. When they filed their original motion for fees, Claimant's counsel asserted a right to recover $450 an hour for lead counsel and $350 an hour for associate work. These rates are within the range of reasonable fees charged by plaintiffs' counsel for FLSA work in the Atlanta market, consistent with the rates charged by Claimant's counsel for other legal work, and identical or similar to rates awarded to counsel in other FLSA actions in this district. Claimant's counsel's late-hour request to increase the billable rates by $150-$240 because it's what opposing counsel charged is unpersuasive. Claimant's counsel work at small law firms whereas Respondent's counsel works as part of a larger, international law firm. As noted by Claimant's expert, as part of a smaller firm, Claimant's counsel performed much of the work themselves, because they did not employ multiple associates or a paralegal. The rate takes into account the fact that Claimant's counsel's hours include the work required of an experienced attorney, a less experienced attorney and a paralegal. Differences in firm size, organization and operation account for the differing fee structures and explain why Claimant's counsel originally claimed $450 an hour for legal work

while Respondent's counsel charged $690 an hour for legal work. Given these factors, along with the reasonable market rate for plaintiffs' counsel in Atlanta, the Arbitrator finds that $450 an hour is a reasonable rate to charge for the work performed by Ben Williams and Mitchell Feldman and $350 is a reasonable rate for the work performed by Jason Quintus, Mr. Feldman's associate, all of whom were capable and qualified counsel who provided sound legal representation to obtain a solid result for Claimant.

2. Reasonable Hours

"The next step in the computation of the lodestar is the ascertainment of reasonable hours. [E]xcessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed. In other words, the Supreme Court requires fee applicants to exercise "billing judgment."" *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988)(citations omitted). "Excluding excessive or otherwise unnecessary hours under the rubric of "billing judgment" means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis. In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant, or otherwise unnecessary." Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate

amount is awarded. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999).

It is difficult to ascertain, much less assess, the billing judgment Claimant has exercised. In Paragraph 55 of his Declaration, Mitchell Feldman asserts that he did not record time for 90% of his phone calls with Mr. Williams and for time spent on hundreds if not thousands of emails and text messages with Mr. Williams, however he provides no documentation to support this claim. Mr. Williams includes a similar assertion in his Declaration, again with no documentation. These claims are called into question by the multiple entries for telephone calls with co-counsel on the NCR-ALL bill. Claimant's Amended Motion for fees reduced the fee request by $1,188 or 1.5%, but did not provide detail for the adjustments made aside from noting that billing entries were adjusted to correct "errors . . . due largely to misdating certain billing entries, data-entry errors and inadvertent oversights." In her Reply, Claimant elaborated to say adjustments were made to correct misdating, input time where no time had been entered and to reduce time entries based on billing judgment. While Claimant's counsel explained that eight entries, equaling 5.33% of the entries, were modified, the Arbitrator struggled to determine the exact modifications made or the specific impetus for each adjustment.

Claimant did not reduce time entries for duplicative work, time spent on documents that were not used, such as the third-party subpoenas, or time spent reviewing the file, talking to other attorneys, traveling, or completing administrative tasks. Claimant contends all of this work was necessary and critical to obtaining the final settlement for Ray. For example, Claimant's counsel contends that time spent preparing and arguing for issuance of the third-party subpoenas was necessary to persuade NCR to work with Salesforce to supply the ESI to establish the overtime hours worked by each of the claimants. While hours spent preparing the third-party

subpoenas likely led to obtaining the critical ESI, not all of the work should be billed. Billing judgment is not an all-or-nothing approach. Rather, billing judgment requires an attorney to assess what time should be reduced to account for duplication, inefficiency, or simply non-justifiable or excessive time. While some of the work dedicated to preparing and arguing for the issuance of third-party subpoenas may be billed, arguably not all of the time should be charged given the subpoenas were never issued. Similarly, time spent in file review, excessive time spent on written discovery, time spent traveling and time spent communicating with co-counsel are the categories of time that should have been reviewed and scrutinized by Claimant's counsel to determine if all recorded hours should be billed.

Respondent also argues that Claimant should have reduced charges that resulted from staffing two attorneys at the corporate deposition and each telephone conference, as well as having two attorneys involved in preparing and reviewing certain filings. As noted, the law recognizes that an exercise of billing judgment may mean an attorney may not be compensated for hours for which he would not bill a client. While the Arbitrator understands the attorneys may have lacked additional staff to perform the more routine tasks, some adjustments should have been made to account for the organizational structure and recognized inefficiencies of Mr. Feldman and Mr. Williams performing the vast majority of the work, both legal and administrative. Any discriminating client engaged in a monthly review of her legal bills would likely request her counsel to staff assignments leanly so as not to accrue excessive legal fees.

Respondent challenged several different categories of time and activities by Claimant's counsel as being excessive, including filing the original FLSA claim by Eric Harris in district court, challenging the standard defenses included in Respondent's Answer, arguing over language in Respondent's proposed protective order, crafting an overly detailed 30(b)(6) request,

billing time for analyzing and ranking potential arbitrators, and spending too much time on the Notice of Settlement. The Arbitrator finds that the time Claimant's counsel spent on these tasks was necessary to obtain the final result for Claimant and not outside the bounds of reasonable activity required to proactively litigate a successful FLSA claim. In many cases, Claimant's counsel's investment of time was necessitated by stances adopted by Respondent's counsel. For example, Respondent elected to proceed with individual arbitrations rather than a single arbitration or combined arbitrations before a smaller number of arbitrators. This decision, which was well within Respondent's right and consistent with the parties' arbitration agreement, required Claimant to spend time researching the list of arbitrators provided by the AAA. Given Respondent elected to have individual arbitrations, Respondent cannot now complain about paying for the time required to select individual arbitrators. Similarly, time invested in filing the district court action, challenging Respondent's defenses, negotiating the protective order, identifying the correct corporate representative for a deposition, and drafting the notice of settlement was necessary and important to counsel's representation of Claimant.

Respondent also contends that Claimant's counsel inflated their bills or overcharged for work that should have been simple and easy to complete, especially considering the economies of scale to be gained across the ten arbitrations. While the Arbitrator agrees that Claimant's counsel may have overcharged for certain tasks, such as preparing interrogatories, the Arbitrator is hesitant to fully adopt Respondent's argument that the billing in this arbitration should have been less because the claims were identical to those asserted in the other nine arbitrations filed against NCR. Had NCR sought efficiency, it could have agreed to allow the actions to proceed as a single action in federal court. Alternatively, the parties could have agreed to allow the AAA to assign a single process arbitrator to address discovery issues and disputes. As noted by

Claimant's counsel throughout the Arbitration, NCR elected to proceed with a single claim in a single arbitration, so it cannot now argue that it did not benefit from efficiencies to be gained from having all of the arbitrations proceed simultaneously.

Claimant's counsel's style, and in particular, Mr. Feldman's style in prosecuting Claimant's claim may have increased the fees charged in this arbitration. Mr. Feldman appears to use an "all in" or "all out" approach to his work. He's either "all in" on an issue, resulting in numerous emails within quick succession or he's "all out," as evidenced by the numerous "out of office/unavailable" automated email responses the Arbitrator received. While the Arbitrator has no opinion regarding the value or success of Mr. Feldman's approach, this approach may result in increased billing as compared to a more metered approach, as demonstrated by Respondent's exhibit showing the number of emails received from Claimant's counsel. See Exhibit 5 to Respondent's Response.

The emails exchanged among counsel along with the interactions with the Arbitrator confirm that counsel did not enjoy a cooperative relationship. This relationship may have resulted in misunderstandings, acrimonious exchanges and miscommunications. While these communication missteps and noncooperative exchanges likely inflated the hours billed, the Arbitrator cannot definitively place blame on counsel for either side. NCR's alleged lack of cooperation and Claimant's alleged over-litigation essentially result in a wash. Similarly, Claimant asserts that her counsel would have charged less if NCR had been willing to engage in meaningful settlement discussions early in the arbitration. This de facto statement adds nothing to the analysis of the proper fees to award. Clearly, if the case had settled sooner, the fees claimed would have been lower. This fact neither justifies an inflated fee request nor suggests that NCR has to pay whatever is demanded because it refused to settle.

Finally, the Arbitrator has some concerns about the accuracy of the billing information supplied by Claimant's counsel. The bills contain apparent duplicative entries and mistakes, and the adjustments to the bills by Claimant's counsel between the initial and amended filing suggest the bills were not prepared and reviewed contemporaneously. While the Arbitrator appreciates counsel's attempts to correct clerical errors in its amended filing, the existence of those errors raises questions regarding the accuracy of the unaltered entries. In addition, the duplication among the entries in the ten arbitrations raises concerns about the specific entries made for LaDawn Ray and whether each task actually required the time collectively reported. Also, entries by Ben Williams and Mitchell Feldman for the same event differ in the time reported raising further questions about the accuracy of the information. Given the strong similarity of claims among the ten arbitrations, the Arbitrator questions why counsel dedicated so much time to customizing interrogatory and document requests and why certain tasks, which applied in all arbitrations, required so much time. These facts, considered in the aggregate, suggest some reduction should be made to account for likely inaccuracies, inadvertent errors and inexact reporting of time by Claimant's counsel.

In support of the amount of fees billed, Claimant argues that Claimant and Respondent essentially accrued the same amount of legal fees. Claimant asserts this argument by comparing the amount of fees requested by Claimant to the amount of fees charged by Respondent, including an estimate for in-house fees. This comparison in not an "apples-to-apples" comparison because the amounts are calculated using higher hourly rates for Respondent's counsel than Claimant's counsel. A comparison of total hours is a better "apples-to-apples" comparison and shows that Claimant's counsel billed 1,977.3 hours to pursue the claims asserted in the ten different arbitrations and Respondent's counsel "billed" 1,387 hours of time.

Claimant's total hours for all ten arbitrations is 30% more than Respondent's total hours for all ten arbitrations, although Respondent's time does not include time billed after August, 2023. Claimant's counsel notes they had additional time billed because of pre-filing activity and the increased time required to communicate with ten clients, rather than one. In addition, Claimant's counsel had to dedicate additional time to interpreting the ESI provided by Respondent. The Arbitrator finds that this less-than-perfect comparison favors neither Claimant nor Respondent and thus, does not impact the overall assessment of the reasonableness of the hours billed by Claimant's counsel. The Arbitrator finds similarly unpersuasive Respondent's argument that Claimant's counsel often billed for more than eight hours in a day, since attorneys have been known to work more than eight hours a day.

The Arbitrator has considered all arguments presented by Respondent and Claimant regarding the fees to be awarded and addressed only those arguments meriting discussion and analysis. To summarize, the Arbitrator finds that some reduction of the fees is required to account for inaccuracies in the fees reported, the absence of an exercise of full billing judgment by Claimant's counsel, duplication of fees in tasks or by multiple attorneys, excessive time spent on discovery, and excessive fees for travel and file review.

3. Reasonable Attorneys' Fees

"Ultimately, the computation of a fee award is . . . an exercise of judgment, because there is no precise rule or formula for making these determinations." *Embree v. Medicredit, Inc*., 752 Fed.Appx. 697, 699 (11th Cir. 2018) (quoting *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001)). The district court is "an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of testimony of witnesses as to value." *Campbell v. Green*, 112

F.2d 143, 144 (5th Cir. 1940). *Barker v. WBY, Inc.*, 1:18-cv-2725-MLB (N.D. Ga. Sep 15, 2021).

"Where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required. In fact, given a voluminous application, most circuits recognize the utility of across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983) abrogated on other grounds by *Gisbrecht v. Barnhart*, 535 U.S. 789, 795–805 (2002). It is also well-settled law that a party may recover fees expended in preparing an application to recover attorney's fees and costs. "Such an award is authorized by the case law." *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983).

Although Claimant suggested a possible reduction of the claimed fees, she has presented a request for the full fee amount. The fees presented are not the result of a considered, edited presentation, but rather appear to be the full amount billed by Claimant's counsel. Collectively, the parties in this case have presented the Arbitrator with over 400 pages of exhibits in connection with Claimant's Amended Motion for fees. Respondent's arguments for reductions or elimination of fees are presented as aggregate amounts for all ten arbitrations rather than specific recommendations for this Arbitration. The Arbitrator would have to review Claimant's billing records line-by-line to calculate the precise reduction required if certain tasks were eliminated. Rather than engage in this inefficient analysis, which would result in additional costs for the Arbitrator's time, the Arbitrator has elected to apply an across-the-board reduction in the total

fees requested by Claimant to adjust the fee request for the noted duplications, excessive hours, inefficient work, and inaccuracies, and an exercise of previously unexercised billing judgment to remove excessive travel time, excessive file review, excessive discovery and abandoned work, among other items. As stated above, there is no precise rule or formula for making these adjustments. Claimant originally recommended a 30% reduction while Respondent has recommended a 75% reduction, along with reductions in the hourly billable rates. Claimant's Reply recommends no reduction and an increase of approximately 50% in the billable rates for the attorneys. None of the suggestions appear to appropriately balance the issues with the fees as presented against the real work performed by Claimant's counsel.

Having weighed the various factors both increasing the hours required to litigate Claimant's claims and inflating the hours reported, the Arbitrator concludes that a 35% reduction in the total fees claimed by Claimant is an appropriate adjustment, resulting in a fee payment of $56,916.93. The Arbitrator has used the billable rates requested by Claimant's counsel in its Amended Motion for Fees and Costs since those rates are consistent with the rates charged for similar work in the Atlanta market.

The fee award calculation is as follows:

| Attorney | Hours | Rate | Total | Reduction | Adjusted Total |
|---|---|---|---|---|---|
| Mitchell Feldman NCR ALL Portion | 44.33 | $450 | $19,948.50 | $6,981.98 | $12,966.53 |
| Mitchell Feldman Ray | 73.2 | $450 | $32,940.00 | $11,529.00 | $21,411.00 |
| Mitchell Feldman Supplemental NCR ALL and Ray | 10.74 | $450 | $4,833.00 | $1,691.55 | $3,141.45 |
| Benjamin | 19.68 | $450 | $8,856.00 | $3,099.60 | $5,756.40 |

| | | | | | |
|---|---|---|---|---|---|
| Williams NCR ALL Portion | | | | | |
| Benjamin Williams Ray | 32.3 | $450 | $14,535.00 | $5,087.25 | $9,447.75 |
| Benjamin Williams Supplemental NCR ALL and Ray | 10.06 | $450 | $4,527.00 | $1,584.45 | $2,942.55 |
| Jason Quintus NCR ALL Portion | 3.1 | $350 | $1,085.00 | $379.75 | $705.25 |
| Jason Quintus Ray | 2.4[9] | $350 | $840.00 | $294.00 | $546.00 |
| **Total** | **195.81** | **--** | **$87,564.50** | **$30,647.58** | **$56,916.93** |

The fee recovery, as adjusted, is more in line with the recovery obtained for Claimant and the work required to obtain that recovery, given the circumstances of this arbitration.

<u>4. Costs</u>

While Respondent objects to the amount claimed by Claimant for fees, it has made no objection to the request for costs. As noted above, Claimant seeks to recover $563.12 in costs, but the supporting documentation shows a total of $490.22 in costs. Therefore, the Arbitrator awards Claimant $490.22 in costs.[10]

## III. Final Award

The Arbitrator AWARDS Claimant $56,916.93 in fees and $490.22 in costs. Pursuant to the terms of the FLSA Settlement Agreement between the parties, Respondent shall pay the

---

[9] Reduced from reported billed hours of 2.5. See page 4 for an explanation of the reduction.
[10] Following the filing of her Amended Motion for Fees and Costs, Claimant filed a Reply which included the declaration of Gregg Shavitz as an expert. In <u>Claimant's Request for Supplemental Attorneys' Fees and Costs</u>, Claimant encouraged the Arbitrator to consider the opinion of Mr. Shavitz but did not request reimbursement for any costs associated with engaging Mr. Shavitz as an expert. Thus, the costs requested by Claimant remain unchanged from her initial Motion for Fees and Costs.

amounts stated above at the latter of the Court approving the settlement between the parties or within twenty-one (21) days of this Order.

The administrative fees of the AAA, totaling $2,950.00, and the compensation and expenses of the Arbitrator, totaling $17,220.00, shall be borne as incurred.

This award is in full settlement of all claims submitted to this arbitration.

So Ordered this 9th day of January, 2024.


/s/ Sherri L. Kimmell
Sherri L. Kimmell, Arbitrator